# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

| | |
|---|---|
| **POARCH BAND OF CREEK INDIANS,** | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) CIVIL ACTION 20-0279-WS-B |
| | ) |
| **AMNEAL PHARMACEUTICALS, LLC,** *et al.*, | ) |
| | ) |
| Defendants. | ) |

## ORDER

This matter comes before the Court on the Motion to Stay Proceedings Pending Likely Transfer to Multidistrict Litigation (doc. 17) filed by a collection of 20 Moving Defendants.[1] The Motion has been briefed and is now ripe.

**I.  Background.**

Plaintiff, Poarch Band of Creek Indians (the "Tribe"), is a federally recognized Indian tribe. On April 3, 2020, the Tribe filed the Complaint in the Circuit Court of Mobile County, Alabama, against more than three dozen named defendants. Weighing in at 683 paragraphs spanning 184 pages, the Complaint is one of thousands of like-minded pleadings filed around the country in recent years seeking relief relating to the ongoing opioid epidemic. The Tribe's Complaint alleges that the opioid crisis has caused it to suffer "substantial loss of resources, economic damages, addiction, disability, and harm to the health and welfare of the Tribe, Tribe Members, and wholly-owned enterprises of the Tribe." (Doc. 1-1, ¶ 1, PageID.36-37.) The

---

[1] For purposes of this Motion, the Moving Defendants consist of the following entities: Endo Health Solutions Inc.; Endo Pharmaceuticals Inc.; Par Pharmaceutical, Inc.; Par Pharmaceuticals Companies, Inc.; Walgreen Co.; Walgreen Eastern Co., Inc.; Allergan Finance, LLC f/k/a Actavis, Inc. f/k/a Watson Pharmaceuticals, Inc.; Allergan Sales, LLC; Allergan USA, Inc.; Johnson & Johnson; Janssen Pharmaceuticals, Inc.; Teva Pharmaceuticals USA, Inc.; Cephalon, Inc.; Actavis LLC; Actavis Pharma, Inc.; The Kroger Co.; Kroger Limited Partnership II; Rite Aid of Alabama, Inc.; Rite Aid of Maryland, Inc.; and Noramco, Inc. No other defendants have submitted anything in support of or in opposition to the pending Motion to Stay.

named defendants are alleged to have been involved in manufacturing, marketing and selling prescription opioid drugs in various capacities, or to have uncritically filled prescriptions for such drugs without scrutiny. Included in the defendants' ranks are numerous pharmaceutical companies, retail pharmacies, and even individual physicians and medical clinics.

On its face, the Tribe's Complaint is framed in terms of state-law causes of action, including negligence, nuisance, fraud and deceit, unjust enrichment, wantonness, civil conspiracy, and violation of the Alabama Deceptive Trade Practices Act. Significantly, the Complaint stresses that the Tribe is claiming damages including, *inter alia*, "the costs of providing … medical care, additional therapeutic and prescription drug purchases, and other treatments for individuals suffering from opioid-related addiction or disease, including overdoses and deaths." (Doc. 101, ¶ 15, PageID.41.)[2] Indeed, a cornerstone of the Tribe's theory of recovery in this case is that defendants should pay the Tribe for monetary losses incurred in providing medical care and treatment for citizens with opioid-related conditions.

On May 18, 2020, defendants Endo Pharmaceuticals Inc. and Endo Health Solutions Inc. (collectively, "Endo") filed a Notice of Removal (doc. 1), removing the action to this District Court. To meet its burden of establishing federal subject matter jurisdiction, Endo maintains that jurisdiction is proper under the federal question provisions of 28 U.S.C. § 1331. Even though the Tribe asserts no federal claims against defendants, Endo posits that § 1331 jurisdiction lies

---

[2] This category of damages, and its centrality to the Tribe's claims for relief, is a recurring theme in the Complaint. The Tribe emphasizes that it "brings this civil action to recover monetary losses that the Tribe has incurred as a direct and proximate result of Defendants' false, deceptive and unfair marketing of prescription opioids." (Doc. 1-1, ¶ 39, PageID.49.) The Complaint reflects that Tribe brought this suit, in part, to recover "significant costs [incurred] in an attempt to abate the opioid epidemic that continues to plague its Citizens and Indian Lands by providing medical services and opioid-related treatments to those in need." (*Id.*, ¶ 57, PageID.53-54.) According to the Complaint, the Tribe seeks to recover "actual pecuniary damages proximately caused by Defendants['] concealment of material fact, which include … expending funds on treatment." (*Id.*, ¶ 564, PageID.193.) In the negligence claim, the Tribe alleges that "Defendants have caused Plaintiff's injury related to the diagnosis and treatment of opioid-related conditions. Plaintiff has incurred massive costs by providing uncompensated care as a result of opioid-related conditions." (*Id.*, ¶ 590, PageID.199.) Similarly, in the unjust enrichment claim, the Tribe alleges that "expenditures by the Tribe in providing healthcare services to people who use opioids have added to Defendants' wealth." (*Id.*, ¶ 614, PageID.202.) The wantonness claim tracks the "diagnosis and treatment of opioid-related conditions" language from the negligence claim verbatim. (*Id.*, ¶ 648, PageID.209.)

because of (i) the framework implemented by the Supreme Court in *Grable & Sons Metal Products, Inc. v. Darue Engineering & Mfg.*, 545 U.S. 308 (2005); and (ii) the premise that any common-law claims pursued by the Tribe outside of statutory right-of-action provisions in the federal scheme would necessarily be federal common law claims. (Doc. 1, PageID.5.)

In the Notice of Removal, Endo argued that this case should ultimately join the more than 2,400 actions that have been transferred to MDL No. 2804, the opiate MDL created by the Judicial Panel on Multidistrict Litigation (the "Panel") in the Northern District of Ohio, "where it will join more than 80 other opioid-related actions filed by Indian tribes and tribal entities." (*Id.*, PageID.3.) Unsurprisingly, the Panel issued a Conditional Transfer Order ("CTO") for this action on May 20, 2020, a mere two days after the Notice of Removal was filed, conditionally transferring this action to the opiate MDL on the grounds that the Tribe's Complaint involves questions of fact that are common to the actions previously transferred to that MDL. The following day, the Tribe filed a notice of opposition to the CTO, resulting in the transfer order being stayed pending briefing and a hearing on the issue of whether this action should or should not be transferred to the opiate MDL. The parties are currently briefing the transfer issue, which the Panel will take up at a hearing on July 30, 2020 and will likely decide soon thereafter.

A critical question is what is to happen to this action in the meanwhile. On May 20, 2020, two days after removal and the same day that the Panel issued the CTO, the Tribe filed a Motion for Remand and Motion for Expedited Ruling (doc. 6) in this case. In that filing, the Tribe argued that federal jurisdiction does not properly lie here and that Endo removed the action on a faulty theory for purposes of having this case drawn into the opiate MDL where it may be stalled or delayed for a considerable period of time before the remand issue is finally adjudicated.[3] Briefing on the Motion for Remand was conducted in a prompt and timely manner, such that the jurisdictional issue has now been fully briefed. During that briefing process,

---

[3] In the Tribe's charged rhetoric, Endo's Notice of Removal was calculated "to rip away the Tribe's constitutional rights and jettison them to the end of a line of thousands of cases with no end in sight. Justice delayed is justice denied." (Doc. 6, PageID.831-32.) The point is clear: The Tribe fears that if this Court fails to decide the Motion for Remand before the Panel makes a final ruling on the transfer question, this case is likely to be absorbed into a large, complex MDL where a busy transferee court may not reach the jurisdictional issue presented in the Motion for Remand for quite some time, thereby delaying the Tribe's ability to resume litigating this case in the Circuit Court of Mobile County, where the Tribe believes it properly belongs.

however, the Moving Defendants enumerated in footnote 1, *supra*, filed their Motion to Stay Proceedings Pending Likely Transfer to Multidistrict Litigation (doc. 17). Briefing on the Motion to Stay concluded on June 25, 2020, and that Motion is now ripe. At issue in the Motion to Stay is whether this Court should take up the Motion to Remand in advance of the Panel's transfer hearing (and, by all appearances, the ensuing probable transfer of this action to the opiate MDL) at the end of July, or whether this Court should stay the matter until the transfer decision is made, thereby placing the Motion for Remand on hold until the end of July and rendering it likely to be adjudicated by the MDL court in Ohio at some later date post-transfer. That narrow issue is presented to this Court for adjudication at this time. In evaluating the parties' arguments, the Court has extensively reviewed not only the briefing on the Motion to Stay, but also the briefing on the Motion for Remand and all other portions of the court file deemed relevant.

II. Analysis.

   A. *Governing Legal Standard.*

District courts are vested with broad discretion to stay proceedings, which authority is incidental to their inherent power to control their dockets and the course of particular litigation. *See, e.g., Clinton v. Jones*, 520 U.S. 681, 706, 117 S.Ct. 1636, 137 L.Ed.2d 945 (1997) ("The District Court has broad discretion to stay proceedings as an incident to its power to control its own docket."); *Landis v. North American Co.*, 299 U.S. 248, 254-55, 57 S.Ct. 163, 81 L.Ed. 153 (1936) ("[T]he power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants."); *Advanced Bodycare Solutions, LLC v. Thione Int'l, Inc.*, 524 F.3d 1235, 1241 (11th Cir. 2008) ("district courts have inherent, discretionary authority to issue stays in many circumstances"). "[I]n determining whether a stay is appropriate in a particular case the court, in its sound discretion, must assess and balance the nature and substantiality of the injustices claimed on either side." *Maiben v. CSX Transp., Inc.*, 2009 WL 1211186, *1 (S.D. Ala. May 1, 2009) (citation and internal quotation marks omitted); *see generally Grice Engineering, Inc. v. JG Innovations, Inc.*, 691 F. Supp.2d 915, 920 (W.D. Wis. 2010) (courts considering whether to enter stay consider factors such as "(1) whether the litigation is at an early stage ...; (2) whether a stay will unduly prejudice or tactically disadvantage the non-moving

party; (3) whether a stay will simplify the issues in question and streamline the trial; and (4) whether a stay will reduce the burden of litigation on the parties and on the court").

It has been observed that "Courts routinely stay an action pending a transfer decision by a MDL panel, particularly when the transferor court believes that a transfer order is likely and when the pending motions raise issues likely to be raised in other cases as well." *Stanton v. Wells Fargo & Co.*, 2017 WL 3701143, *1 (M.D. Fla. Jan. 23, 2017); *see also Hess v. Volkswagen Group of America, Inc.*, 2016 WL 3483166, *3 (N.D. Ala. June 27, 2016) ("where a multi-district proceeding has been established, courts have routinely stayed motions pending rulings by the JPML"). This is true even where, as here, the pending motions are jurisdictional in nature and go directly to the power of federal courts to hear the underlying dispute. *See, e.g., In re Ivy*, 901 F.2d 7, 9 (2d Cir. 1990) ("Once transferred, the jurisdictional objections can be heard and resolved by a single court and reviewed at the appellate level in due course. Consistency as well as economy is thus served."); *Kline v. Earl Stewart Holdings, LLC*, 2010 WL 3432824, *1 (S.D. Fla. Aug. 30, 2010) (granting motion to stay pending transfer decision by JPML, despite unresolved motion to remand, where the case was not procedurally advanced, transfer decision was expected shortly, and the unsettled jurisdictional issue "should not be decided where a previously established MDL court is already hearing similar actions"); *Lucas v. Springhill Hospitals, Inc.*, 2009 WL 160418, *1 (S.D. Ala. Jan. 22, 2009) ("The undersigned commonly stays such cases even when jurisdictional issues have been raised because such jurisdictional issues are likely to arise in the other cases … that will be transferred to the MDL Panel and consistency as well as economy are served by having those issues decided by a single court.").[4]

---

[4] In opposing the request for entry of stay, plaintiff suggests that this Court must take the jurisdictional issue under submission before entertaining defendants' request for a stay. (Doc. 25, PageID.1063 ("[D]istrict courts are instructed to remand cases at any time it appears that the court lacks subject matter jurisdiction. No statute or rule of procedure allows federal courts to deviate from this rule.").) As numerous district courts have recognized, however, courts are empowered to enter stays in appropriate circumstances, even where there are pending jurisdictional motions. *See, e.g., Mobile County Board of Health v. Sackler*, 2020 WL 223618, *2 (S.D. Ala. Jan. 15, 2020) ("When a district court has before it both a motion to remand and motion to stay, as is the case here, the Court possesses the jurisdiction to resolve the motion to remand prior to a transfer of a case by the JPML. … A district court may also grant the motion to
(Continued)

In analyzing competing motions for stay and for remand against the backdrop of a likely imminent transfer to MDL proceedings, the undersigned hews to the test articulated in *Betts v. Eli Lilly & Co.*, 435 F. Supp.2d 1180 (S.D. Ala. 2006). In *Betts*, this Court explained that in evaluating whether to defer ruling on a pending motion to remand in light of a forthcoming likely transfer to MDL, "a court should first give preliminary scrutiny to the merits of the motion to remand and ..., if this preliminary assessment suggests that removal was improper, the court should promptly complete its consideration and remand the case to state court." *Id.* at 1182 (citations and internal quotation marks omitted); *see also Wagner v. Volkswagen Group of America, Inc.*, 2016 WL 916421, *2 (S.D. Ala. Mar. 10, 2016) ("If the transferor court, upon preliminary consideration, finds the jurisdictional issue to be straightforward, it should decide the motion to remand."). If, however, "the jurisdictional issue appears factually or legally difficult, the court's second step should be to determine whether identical or similar jurisdictional issues have been raised in other cases that have been or may be transferred to the MDL proceeding." *Meyers v. Bayer AG*, 143 F. Supp.2d 1044, 1049 (E.D. Wis. 2001); *see also Wagner*, 2016 WL 916421, at *2 ("If the jurisdictional issue appears factually or legally difficult and that issue is similar or identical to issues already raised or likely to be raised before the transfer[ee] court, the Court should seriously consider granting a stay of the motion to remand.").

And if the second step reveals that identical or similar jurisdictional issues have indeed been raised in other actions transferred to the MDL proceeding, the Court moves on to the third step, which is to evaluate the motion to stay based on traditional factors including "(1) the interests of judicial economy; (2) hardship and inequity to the moving party if the action is not stayed; and (3) potential prejudice to the non-moving party." *Meyers*, 143 F. Supp.2d at 1049 (citation omitted); *see also Warren v. Cook Sales, Inc.*, 2016 WL 10807227, *1 (S.D. Ala. Mar. 10, 2016) (identifying traditional factors as "(1) whether the litigation is at an early stage ...; (2) whether a stay will unduly prejudice or tactically disadvantage the non-moving party; (3) whether a stay will simplify the issues in question and streamline the trial; and (4) whether a stay will reduce the burden of litigation on the parties and on the court.") (citation omitted). The

---

stay without ruling on the motion to remand because the transferee MDL judge can also rule on the pending motion to remand.") (citations and internal quotation marks omitted).

Court will apply the *Betts / Meyers* test here, just as the parties have done in their respective briefs.

**B.  *Preliminary Review of Motion to Remand.***

The analysis begins with a preliminary examination of the merits of the Tribe's pending Motion to Remand. The parties articulate markedly differing characterizations of the jurisdictional issues joined in that Motion. According to the Moving Defendants, "[a] preliminary review of the jurisdictional question in this case makes clear that it is both legally and factually difficult." (Doc. 18, PageID.979.) By contrast, the Tribe insists that "these jurisdictional issues are both straightforward and have been interpreted by this Court before." (Doc. 25, PageID.1070.) Given these divergent views as to whether the jurisdictional issue is difficult or straightforward, evaluation of the first *Meyers* step necessarily requires examination of the parties' respective arguments presented in briefing the Tribe's Motion to Remand.

In its removal papers, Endo predicated federal jurisdiction solely on the federal question provisions of 28 U.S.C. § 1331. All of the Tribe's claims joined in the Complaint sound nominally in Alabama law; nonetheless, Endo insists that § 1331 applies pursuant to the Supreme Court's holding that "federal jurisdiction over a state law claim will lie if a federal issue is: (1) necessarily raised, (2) actually disputed, (3) substantial, and (4) capable of resolution in federal court without disrupting the federal-state balance approved by Congress." *Gunn v. Minton*, 568 U.S. 251, 258, 133 S.Ct. 1059, 185 L.Ed.2d 72 (2013). Endo reasons as follows: The Complaint is clear that the Tribe seeks, among other things, to recover the expenditure of funds used to provide medical care and treatment to individuals suffering from opioid-related addiction, disease or medical conditions. But the federal government has a comprehensive statutory and regulatory scheme in place to provide health care funding and health care services to Native American tribes, including the Indian Health Care Improvement Act, 25 U.S.C. §§ 1601 *et seq.* (the "Act"), administered by the Indian Health Service.[5] The Act "funds a vast array

---

5  *See, e.g., Lincoln v. Vigil*, 508 U.S. 182, 185, 113 S. Ct. 2024, 124 L. Ed. 2d 101 (1993) ("The Indian Health Service, an agency within the Public Health Service of the Department of Health and Human Services, provides health care for some 1.5 million American Indian and Alaska Native people."); *Arizona Health Care Cost Containment System v. McClellan*, 508 F.3d 1243, 1245 (9th Cir. 2007) ("As part of its unique government-to-government relationship with American Indian Tribes and Alaska Native corporations, the federal government provides health care services to roughly 1.9 million American Indian and Alaska Native people."). In the Act, (Continued)

of medical treatment, planning, research, health care delivery systems and infrastructure both for Plaintiffs and for individual members of Indian Nations … exclusively by Congressional appropriations and federal monies passed through the Secretary of the Interior." *Acoma Pueblo v. American Tobacco Co.*, 2001 WL 37125252, *6 (D.N.M. Feb. 20, 2001). In Endo's view, this unique federal framework for Indian health care means that the Tribe's claims in this action necessarily implicate substantial federal issues. After all, the Tribe must establish an injury-in-fact in order to have standing to pursue the causes of action set forth in the Complaint. If the health care costs in question were shouldered by the federal government, Endo reasons, then the Tribe has no injury-in-fact and no standing to pursue that category of damages. Thus, according to Endo, resolution of the injury-in-fact question will require extensive review and analysis of the complex federal regime governing Indian health care funding in order to ascertain whether the Tribe has suffered a cognizable injury as to the costs of providing opioid-related health care services and treatment to tribal members. Simply put, Endo's position is that "the Tribe ***must*** prove the element of cognizable injury to recover the health care costs they seek, and this ***requires*** analysis of the federal regime governing funding and provision of health care services to Indian tribes." (Doc. 16, PageID.916.)

In arguing otherwise, the Tribe repeatedly invokes the well-pleaded complaint rule, which provides that federal jurisdiction exists only when a federal question is presented on the face of the plaintiff's well-pleaded complaint. *See Dunlap v. G&L Holding Group, Inc.*, 381 F.3d 1285, 1290 (11th Cir. 2004). Of course, the "substantial federal issue" rule upon which Endo relied in removing this action is an exception to the well-pleaded complaint rule. *See, e.g., Grable & Sons Metal Products, Inc. v. Darue Engineering & Mfg.*, 545 U.S. 308, 312, 125 S. Ct. 2363, 2367, 162 L. Ed. 2d 257 (2005) (substantial federal issue "doctrine captures the commonsense notion that a federal court ought to be able to hear claims recognized under state law that nonetheless turn on substantial questions of federal law, and thus justify resort to the

---

Congress made an express finding that "[f]ederal health services to maintain and improve the health of the Indians are consonant with and required by the Federal Government's historical and unique legal relationship with, and resulting responsibility to, the American Indian people." 25 U.S.C. § 1601(1). Congress also declared it to be "the policy of this Nation, in fulfillment of its special trust responsibilities and legal obligations to Indians ... to ensure the highest possible health status for Indians and urban Indians and to provide all resources necessary to effect that policy...." *Id.* § 1602(1).

experience, solicitude, and hope of uniformity that a federal forum offers on federal issues"). Next, the Tribe insists that *Gunn* / *Grable* principles are inapplicable because "[t]he Tribe's cognizable injuries are the profound harm Defendants have inflicted on its citizens – injuries that clearly do not require analysis of the federal regime governing funding and provision of health care services to Indian tribes." (Doc. 22, PageID.1054.) The Court is not so sure. As plaintiff strenuously argues in its briefs, the Tribe is indeed the master of its Complaint. In that pleading, the Tribe chose to frame its claims and its damages in terms of recovery of funds spent on opioid-related health care services and treatments for tribal members. Having elected to posture its claims and its damages in that manner, the Tribe cannot sidestep the jurisdictional implications of those allegations via blanket statements that "[t]his case is not about recovery of federal funds." (*Id.*)[6]

The Court need not, and does not, make any definitive pronouncements as to whether § 1331 jurisdiction does or does not lie in this case. That is not the proper inquiry of the first step of the *Betts* / *Meyers* analytical framework. Rather, the Court simply observes that the Complaint necessarily raises legally and/or factually complex issues relating to the Tribe's standing to pursue the claims and damages delineated in its pleading. Those issues may require examination and application of the federal statutory and regulatory regime for Indian health care, which may in turn be sufficient to trigger the "substantial federal issue" basis for federal question jurisdiction under the *Grable* / *Gunn* line of authorities.[7] Accordingly, the Court finds that the

---

[6] The Tribe's stance, reduced to its essence, is that "[t]he fact that a portion of the Tribe's health care funds may have come from the federal government … **has no impact on the issues presented in this case**." (Doc. 22, PageID.1052 (emphasis added).) It is not obvious why this position must be valid. Again, it is incumbent on the Tribe to establish standing. How can the Tribe show entitlement to pursue its claims for recovery of opiate-related health care services and treatment costs without in-depth interpretation and application of the federal regime that provides health care funding to tribal members? The Tribe does not say. This critical, potentially difficult issue calls for careful analysis, rather than simple kneejerk adjudication.

[7] It is true, of course, that as the Tribe points out, "this case is seeking significant relief beyond any funds provided by the federal government, including recovery of the Tribe's own tribal funds and abatement of the serious public nuisance created by Defendants." (Doc. 22, PageID.1054.) As to those other bases of relief, the Tribe may be correct that no federal issues are implicated. But the facts remain that (i) the Tribe bears the burden of establishing standing, (ii) a central form of relief demanded in the Complaint is recovery of the costs of providing health care services to tribal members, and (iii) those funds may well be the subject of
(Continued)

first step of the *Betts / Meyer* analysis – namely, that preliminary assessment of the merits of the motion to remand suggests that the jurisdictional issue is factually or legally difficult – points against summary denial of the motion to stay and prompt remand of this action to state court.

### C. The Same Issues Are Before the MDL Court.

Where, as here, "the jurisdictional issue appears factually or legally difficult, the court's second step should be to determine whether identical or similar jurisdictional issues have been raised in other cases that have been or may be transferred to the MDL proceeding." *Meyers*, 143 F. Supp.2d at 1049. This question is unambiguously answered in the affirmative.

The basic facts concerning the cases and issues before the MDL court are undisputed. As the Moving Defendants point out, included among the 2,400+ related lawsuits already transferred to the Northern District of Ohio for coordinated or consolidated pretrial proceedings in MDL No. 2804 are more than 80 materially identical opioid actions brought by tribes and tribal entities. Of those tribe-initiated opioid actions currently pending in MDL No. 2804, the Moving Defendants identify at least five that were removed to federal court on precisely the same jurisdictional theory invoked here. (Doc. 18, PageID.972-73.) The Moving Defendants further state that no federal district court in the country has ruled on a motion to remand in a tribal opioid case prior to transfer to MDL No. 2804. (*Id.*, PageID.973.) And the Moving Defendants show that at least three tribal opioid suits now pending in MDL No. 2804 have unresolved remand motions that

---

comprehensive federal legislation and regulation, such that (iv) in-depth analysis of that federal scheme may be required to ascertain whether the Tribe does or does not have standing to pursue those claims for relief. *See generally Acoma Pueblo*, 2001 WL 37125252, at *7 ("Where expenditures allegedly caused by tortious conduct were undertaken by the United States government and were not at any time subject to Plaintiffs' claims or control, the question whether Plaintiffs … have suffered an economic injury demands an immediate answer on which all else depends. Further, whether Indian Nations hold authority to seek a reimbursement of monies spent on their behalf, but neither appropriated nor controlled by their governments must also be decided before Plaintiffs' case can proceed. These issues require reference to federal law. … The Indian Health Care Act and related law is pertinent not as a defense, but as the only means of deciding whether Plaintiffs stand in a position to have been harmed, and if harmed, whether they may be compensated."). All of these factors, taken in the aggregate, convince the Court that the issues presented by the Motion to Remand may be difficult, or at least sufficiently complex to warrant proceeding to the second step of the *Betts / Meyers* analysis.

raise identical jurisdictional issues to those joined in the Tribe's Motion to Remand in this case. (*Id.*, PageID.980.)[8] The Tribe neither contests nor controverts any of these points.[9]

In short, the information before this Court plainly establishes that identical or similar jurisdictional issues to those raised in the Tribe's Motion to Remand are currently pending in MDL No. 2804. As such, the second step in the *Betts* / *Meyers* test favors granting the Moving Defendants' Motion to Stay and thereby enabling the transferee court to decide the jurisdictional issues presented here in tandem with adjudication of the same issues raised in other cases that the transferee court must decide anyway.

### D.   *Traditional Stay Factors.*

Moving on to the third step of *Betts* / *Meyers*, the Court must consider the traditional factors in a stay analysis, such as whether a stay would promote the interests of judicial economy, whether and to what extent the Moving Defendants would be harmed if a stay were not granted, and whether and to what extent the Tribe would be harmed if a stay were granted.

In light of the circumstances described *supra*, it cannot reasonably be disputed that a stay would conserve judicial resources and facilitate consistent rulings. Again, this action has a pending Motion to Remand raising potentially complex and difficult jurisdictional issues that are precisely the same as those joined in multiple cases that have already been transferred to the MDL proceedings. If this action is stayed and then transferred by the Panel to MDL No. 2804 (as appears probable),[10] then the transferee judge can decide these identical legal and factual

---

[8]   Indeed, the Moving Defendants indicate that "the Tribe's remand motion [which was filed just 48 hours after the Notice of Removal] is borrowed nearly verbatim from these predecessor actions." (*Id.*)

[9]   Rather, the Tribe implies that the MDL judge would likely remand this action by indicating that Endo's jurisdictional argument "has been denied by the very U.S. District Judge presiding over MDL 2804, the Honorable Judge Dan Aaron Polster." (Doc. 6, PageID.832.) The Court has reviewed the cited Judge Polster opinion, and finds that it does not foreclose Endo's arguments for federal jurisdiction in this case.

[10]   Plaintiff has identified no persuasive reason to believe that the Panel is likely to credit the Tribe's objections to transfer of this action to the opiate MDL. By all appearances based on the record before the Court at this time, this case lies in the heartland of the types of cases that MDL No. 2804 was designed to process. Thus, there appears to be no significant likelihood that the Tribe will succeed in its efforts to persuade the Panel to vacate the Conditional Transfer Order and return this case to this Court for adjudication outside the
(Continued)

issues one time in a manner that ensures consistency and economical application of judicial resources. In the absence of a stay, by contrast, this Court and the MDL judge would be forced to expend resources examining and adjudicating these identical issues at the same time in similar cases, resulting in both significant duplication of effort and the specter of inconsistent results. This factor strongly favors entry of a stay.[11]

Likewise, the balance of harms points in favor of granting the Motion to Stay. From defendants' standpoint, denial of a stay would subject defendants (many of whom are also defendants in hundreds or more of the other actions transferred to MDL No. 2804) to the heavy burden of litigating the same issues in multiple fora contemporaneously, with the risks of inconsistent proceedings and inconsistent results dogging their footsteps at every turn. By contrast, entry of a stay would not significantly prejudice the Tribe. At most, the Tribe insists that it would suffer prejudice in the form of delayed adjudication of its Motion to Remand. (Doc. 25, PageID.1068.) This argument is not persuasive because (i) the opiate MDL was created years before the Tribe filed this action, such that the recent vintage of the Tribe's

---

parameters of MDL No. 2804. The undersigned therefore does not credit as a likely scenario the Tribe's suggestion that a stay would cut against judicial economy because "at best Poarch Creek will be able to have this case returned to this Court" by the Panel for adjudication of the Motion to Remand. (Doc. 25, PageID.1068.)

[11] In arguing the other side, the Tribe hypothesizes that its Motion to Remand might remain pending in the MDL for a protracted period of time before the transferee court decides it. That point, however, has nothing to do with judicial economy or conservation of resources. Even if it did, there are no facts before the Court to establish that the Tribe's Motion to Remand will languish in the MDL court substantially longer than it would in this District Court. The Tribe offers only speculation. Equally unpersuasive is the Tribe's contention that judicial economy disfavors a stay here because entry of a stay "would require the parties to wait and see if this case can be sent to another court that will also lack jurisdiction … [and] invoke the judicial resources of additional courts, including the JPML Panel." (Doc. 25, PageID.1066.) Plaintiff's position presupposes that its Motion to Remand is "plainly meritorious"; however, for the reasons set forth above, the Tribe's jurisdictional arguments are not a slam-dunk for remand. The point is simple: If a stay is granted, this action will almost certainly end up in the MDL proceedings shortly (as soon as the Tribe's objections to such a transfer can be resolved by the Panel) where a single judge can consider the Tribe's Motion to Remand at the same time that it considers identical motions to remand (from which the Tribe borrowed heavily in crafting its Motion to Remand here) in other transferred actions. If a stay were denied, however, then both this Court and the MDL court would consider, evaluate and resolve precisely the same jurisdictional issues in analogous proceedings at the same time. The latter approach is glaringly less favorable to the interests of judicial economy and consistency than the former approach.

Complaint undercuts any assertion that it is in urgent need of immediate relief; (ii) although the Tribe complains that its "evidentiary sources will become stale" (*id.*) while awaiting a ruling on the Motion to Remand, there is no reason to believe that the Tribe cannot undertake suitable measures in the interim to preserve and protect those evidentiary sources via discovery mechanisms or otherwise; and (iii) the Tribe offers nothing but its own speculation to support the notion that the Motion to Remand will remain undecided for a lengthy period of time in the MDL action.[12]

For all of these reasons, the Court concludes that the traditional factors militate in favor of entering a brief stay of these proceedings pending final determination by the Panel as to whether this action will be transferred to the opiate MDL proceedings.

**III.     Conclusion.**

The Moving Defendants' Motion to Stay Proceedings Pending Likely Transfer to Multidistrict Litigation (doc. 17) is **granted**.  This action is **stayed** pending a final decision by the Judicial Panel on Multidistrict Litigation as to whether this case will or will not be transferred to the U.S. District Court for the Northern District of Ohio for coordinated or consolidated pretrial proceedings in MDL No. 2804.

DONE and ORDERED this 7th day of July, 2020.

s/ WILLIAM H. STEELE
UNITED STATES DISTRICT JUDGE

---

[12]     This is particularly true given the Tribe's acknowledgment that the MDL court is using "parallel processing" in the opiate MDL matter, which is "usually far more efficient," in that it involves multiple trial judges working at the same time on different parts of the case. (Doc. 25, PageID.1071 n.8.)  If the MDL court is using these admittedly efficient case-management techniques, then why does the Tribe believe its Motion to Remand would not be reached by the MDL court for a period of years following the transfer?  Plaintiff does not say.